SCHLESINGER *et al.* *v.* KANSAS CITY & S. RY. Co. *et al.*

(*Circuit Court, W. D. Missouri, W. D.* September 24, 1889.)

1. VENDOR AND VENDEE—CONVEYANCE OF RAILROAD—CONTRACT.
   Whatever may be the effect of an instrument purporting to convey property consisting of the road-bed, etc., of a railroad, where the grantor receives a consideration and abandons the property of which the grantee takes possession, enters into a new contract with the parties to whom the grantee's title is forfeitable, and completes the road, the title no longer remains in the grantor.

2. FRAUDULENT CONVEYANCES—RIGHTS OF CREDITORS.
   Property, to which the grantor's title was subject to speedy forfeiture, consisting of the road-bed, etc., of an incompleted railroad, which had been uncared for for four years, was conveyed in consideration of $100,000 of income railroad bonds, which had a purely speculative value. *Held*, that a claim against the grantor for damages for breach of contract to purchase materials could not be charged upon such property, as having been conveyed without consideration and in fraud of claimants' rights, where the grantor had never received anything under the contract, though it had paid part of the price, and the conveyance was made nine months before either party thereto had any notice of claimants' intention to make any further claim.

In Equity. Bill to enforce a judgment.

*Pratt, McCrary, Ferry & Hagerman,* for complainants.
*John O'Grady* and *C. O. Tichenor,* for defendants.

BREWER, J. This is a suit in equity, brought to charge certain property in the hands of the defendant railway company with the payment of a judgment in favor of complainants and against the defendant construction company. The property sought to be charged is the right of way, road-bed, masonry, etc., formerly belonging to the Kansas City, Memphis & Mobile Railway Company, and now in the possession and use of the defendant railway company. In the early part of 1876 the Kansas City, Memphis & Mobile Railway Company, which had constructed and then owned the property in question, was thrown into bankruptcy, and the property conveyed to assignees in bankruptcy. At that time several miles of road had been graded, and many thousand dollars expended in masonry and culverts. On April 25, 1877, the assignees in bankruptcy, in pursuance of orders of the court, sold and conveyed the property to John D. Bancroft for $15,025. The purchase was made for the benefit of a few gentlemen, merchants, and having business interests in Kansas City, who purchased, not with a view of completing the road themselves, or of speculation in the purchase, but to secure its construction and control in the interests of Kansas City. On the 27th day of April, 1877, Bancroft conveyed the property to Thomas K. Hanna, Benjamin McLean, and John D. Bancroft, as trustees for the parties interested in the purchase. These gentlemen held the title until January 13, 1880, when they conveyed it to James I. Brooks for the cash consideration of $19,156.87, and upon certain terms and conditions. Mr. Brooks purchased for the defendant construction company, to which in a few days he conveyed the property. The conditions of the conveyance from the trustees, and through which defendant construction company received title, are these:

"Subject, however, to the following conditions: Said party of the second part is to build said railroad from Kansas City to Harrisonville or Belton, as said second party may elect, on or before January 1, 1881, so as to be ready for use as a railroad, and also to complete said railroad to the coal fields of Bates county, to a point south of Butler, on or before July 1, 1881, so as to be ready for like use as aforesaid; and, if said second party shall fail to build said railroad to said coal fields as aforesaid, then the property so to be sold as aforesaid shall revert to said first party, and reinvest in them the same as they now hold the same: provided, however, that as soon as said second party shall expend the sum of fifty thousand dollars in the construction of a road-bed for said railroad, commencing at Kansas City, and running southwardly, then the said provision shall become null and void and of no effect whatever; and, upon said expenditure being made in the building of said railroad, as aforesaid, by said second party, of said sum of fifty thousand dollars, then said trustees are to execute to said second party, or its assigns, an instrument in writing acknowledging the waiver and extinguishment of said forfeiture."

On September 18, 1880, a conveyance of the property was executed in the name of the defendant construction company to the defendant railway company, which deed, though attested by the secretary and seal

of the company, was signed only by one Henry D. Ashley as agent of the construction company. The consideration expressed in this deed was $250,000. On December 15, 1880, this instrument was executed by the trustees and beneficiaries to the railway company:

"Whereas, the Kansas City, Memphis & Mobile Railroad, with all its road-bed, rights of way, appurtenances, and property and rights of property, whatsoever, connected with said railroad, with all the franchises of the Kansas City, Memphis & Mobile Railroad Company, were, by deed dated January 13, 1880, sold and conveyed by the undersigned trustees to one J. I. Brooks, on certain conditions expressed and contained in said deed; and whereas the title to said property, subject to the said conditions, has, by sundry mesne conveyances, passed to and vested in, and is now owned and held by, the Kansas City & Southern Railway Company; and whereas said last-named Co. has not been able to comply with and perform said conditions within the time specified in said first-named deed for their performance, but is now willing to deposit, and has deposited, with said trustees the sum of $25,000 as a guaranty by said last-named company of the good faith of its purpose to build a railroad south-eastwardly from Kansas City, Mo., through the coal fields of Henry county, Mo., and the iron fields of St. Clair county, Mo., the receipt of which sum of $25,000 by said trustees is hereby acknowledged; and whereas, since the making of said deed to said J. I. Brooks, various sums of money have been expended for rights of way, engineering, and other necessary expenses connected with the enterprise of building said railroad, in addition to the purchase price paid to said trustees on the execution of said first-named deed by them, and whereas the owners of more than two-thirds of the money and shares furnished by the persons and firm named in the deed of said property to said trustees, dated April 27, 1877, have directed the undersigned trustees to execute and deliver this instrument to said Kansas City & Southern Railway Co.,—now, therefore, in consideration of the premises, and of the sum of one dollar to said trustees by said Kansas City & Southern Railway Co. in hand paid, the receipt whereof is hereby acknowledged, it is agreed, stipulated, and covenanted by and between said trustees, for themselves and their said beneficiaries and said K. C. & S. Railway Co., as follows: (1) The conditions provided and expressed in said deed of said trustees to said J. I. Brooks are hereby annulled, rescinded, and extinguished, and the said K. C. & S. Railway Company are hereby released and forever discharged from the performance of the same, or any part thereof, and in lieu thereof the following conditions are hereby provided,—that is to say: Said trustees, or a majority of them, shall, as said railroad from Kansas City, south-eastwardly through the coal fields of Henry county, Mo., and the iron fields of St. Clair county, Mo., shall be constructed, pay out said $25,000 in the estimates and orders made and given in the building of said railroad by the chief engineer of said K. C. & S. Railway Co., and as soon as said $25,000 is so paid out, and the additional sum of $15,000 is expended by said last-named Co. in the building of said railroad, then said last-named Co. shall hold said property so conveyed free from any and all claims of whatsoever kind on the part of said trustees or their beneficiaries or any of them. (2) It is further provided and covenanted that, if said last-named Co. shall not expend the full sum of $25,-000 in the building of said railroad before July 1, 1881, then so much of said $25,000 so deposited as shall, on the day last aforesaid, be unexpended, shall be forfeited to and become the money and property of said trustees for the benefit of their beneficiaries. (3) It is further provided and covenanted that, as soon as said $25,000 so deposited shall be paid out, and as soon as the chief engineer of said last-named Co. shall make his certificate of expenditure by said last-named Co. of said additional $15,000 in the building of said railroad,

which sum of $15,000 shall be expended before October 1, 1881, then said trustees shall deliver to said last-named Co. an instrument of writing, duly executed and acknowledged, evidencing the full compliance of all the conditions herein contained by said last-named Co., and, if the sum of $40,000 shall not, as above provided, be expended by said Co. before October 1, 1881, then said property shall revert to said trustees as by said deed to said Brooks is provided."

After this the defendant railway company took possession of the property, and has completed and in operation the line of railroad. On March 2, 1880, after the purchase by the defendant construction company, it contracted with complainants for the purchase of 5,000 tons of steel rails at $51 per ton, on which contract it paid complainants $50,000. Little more than two months thereafter, on May 10, 1880, finding itself unable to complete the contract, the construction company authorized the complainants to sell the rails for its account, without in any way prejudicing their claim for damages against the company. No rails were ever in fact delivered to or received by the construction company, but, the price of rails having depreciated quite rapidly, the complainants sold them much below $51, and presented a claim for damages above the $50,000 received, in the neighborhood of $40,000. Suit was commenced on this claim on October 7, 1881, writs of attachment issued and levied upon the property in question, and on February 1, 1886, complainants recovered judgment against the construction company for $35,901.39, and it is to enforce that judgment that this suit is brought.

The contention of complainants is that the deed signed by Henry D. Ashley was ineffectual to pass the title away from the defendant construction company, and therefore it still remains in the construction company, and subject to this judgment. Or, if it be true that the construction company did part with its title, that it was a conveyance in fraud of the rights of these complainants as creditors, because it was a conveyance without consideration of all its property. As a matter of fact, this was all the property the construction company had, and the judgment rendered shows that it was in debt to complainants; so that in this respect the questions presented are whether the construction company has conveyed away its title, and, if so, whether the transaction is void as against the complainants.

That the construction company has parted with its title I have little doubt. Whatever may be said as to the legal effect of the instrument signed by Mr. Ashley, it is clear that the construction company abandoned the property, and the railway company took possession. The construction company held the title subject to speedy forfeiture, and, while there is dispute in the testimony as to whether there was ever the formality of a surrender, it is evident that all parties in interest understood that it had practically abandoned the property. It in fact received a consideration, the nature and value of which will be considered hereafter, and, with its knowledge, the railway company and the trustees entered into a new contract involving expenditures by the railway company, and with like knowledge the railway company proceeded to

complete the railroad. Under these circumstances it would be ignoring the substance of things to hold that the title still remained in the construction company.

But the difficult question is the other, and, in respect to this, I notice —*First*, that there are no especial equities in complainants' claim, either against the construction company or upon this property. Not a single rail was ever received by the company, or placed upon the road-bed. In other words, the property was in no manner improved, and the company never received anything. While the complainants' claim is undoubtedly a just debt, it is only a naked, barren, legal obligation, unattended with any equities as against the company or the property. *Secondly*, there is nothing in the conduct of either the construction or railroad company which indicates bad faith or an effort to avoid just liabilities. The construction company had about $75,000, two-thirds of which went to complainants, the company receiving nothing therefor, $19,000 of it to the trustees for the purchase of the property, and the balance was expended in surveys and kindred matters. Finding itself unable to complete its undertaking, it practically abandoned the work; and the contract in pursuance of which the railroad company paid out money and assumed liability was executed nine months before, by the commencement of suit, notice was given of any intention on the part of the complainants to make further claim against the construction company. *Thirdly*, there was a consideration. It appears that the construction company received $100,000 in income bonds of the railway company. It is contended that they were worthless, and doubtless their only value was speculative; but what was the value of that which the construction company parted with? It would be grossly unfair to estimate its value by the money expended on the road-bed and masonry. Even when a railroad is completed, and in operation, the cost is a very uncertain test of value. The amount of business which the road does, the earnings which it makes, are far more certain tests of value than the cost of construction. As the cost is a poor test of value in a completed road, much more is it so in reference to the disconnected fragments of an incomplete road, and this when the owner has a perfect and indefeasible title. And here it must be borne in mind that the road-bed had been lying for over four years uncared for, and subject to all the waste and deterioration which come from rains and the changes of the seasons. But, beyond all this, the construction company had no indefeasible title. It had done no work during its possession, or practically none, and its title was subject to a speedy forfeiture. It was almost an impossibility for it, in the time left, to have performed the conditions necessary to prevent a forfeiture, so that practically it held title subject to the pleasure of the trustees, its vendors. Under these circumstances, what was the value of its interest? Certainly, most trifling; and, although from the testimony I cannot find that there was ever any formal surrender to the trustees, it is obvious that the parties treated the matter as though the forfeiture had been made,—as though the construction company had abandoned the work, and the way was opened for a new arrangement between

the railway company and the trustees. The value of the income bonds may have been and was purely problematical and speculative, but was that value any less than that of the interest of the construction company in the property? It is very difficult to believe that it was. Looking at all the circumstances surrounding these transactions, it seems to me that it would be grossly inequitable to permit the complainants to treat this property as then the absolute and indefeasible property of the construction company, and to charge it with their claim as having been sold and conveyed in fraud of their rights. The complainants may have lost some portion of the profits expected from their contract, but the construction company lost all that it had; and the railway company, while it received something, got no more than it might have easily obtained from the trustees directly after a forfeiture had been formally declared. Indeed, as I have before said, the parties seem to have acted as if the forfeiture had already been declared, and the interest of the construction company had ceased. The first stipulation in the contract between the railway company and the trustees recites that the conditions in the deed from the trustees to Brooks are annulled, rescinded, and extinguished, and, in lieu thereof, the conditions following are provided, implying plainly that there was a new transaction between new parties in lieu of that which had proved practically a failure.

For these reasons I think that the defendants are entitled to a decree dismissing the bill, and this without reference to the technical questions presented as to the effect of the attachments placed upon the road-bed and masonry. The bill will be dismissed at complainants' costs.